

**DLA Piper LLP (US)**
1251 Avenue of the Americas, 27th Floor
New York, New York  10020-1104
www.dlapiper.com

Timothy E. Hoeffner
timothy.hoeffner@dlapiper.com
**T**  212.335.4841
**F**  212.884.8551

August 13, 2015
*BY ECF*

Hon. Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

Re:     ***Belesis, et. ano. v. Waksal, et. al.*, No. 15-CV-5048 (AT)**

Dear Judge Torres:

        We write on behalf of Defendants.  Pursuant to Rule 3.A(ii) of Your Honor's Individual Practices, we respectfully request a pre-motion conference to discuss Defendants' proposed motion to dismiss Plaintiffs' Amended Complaint ("AC") under Rules 9(b) and 12(b)(6), and the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ("PSLRA").[1]

**A.        The Parties and Plaintiffs' Allegations**

        Plaintiff Anastasios Thomas Belesis ("Belesis") is the founder and former CEO of John Thomas Financial, Inc. ("JTF"), a defunct New York financial services firm.  (*See* AC ¶ 4.)  In January 2013, the Securities and Exchange Commission barred Belesis from associating or working with any broker-dealer or investment adviser.  In January 2015, the Financial Industry Regulatory Authority ("FINRA") expelled JTF from FINRA and permanently barred Belesis from the securities industry.[2]  Belesis is the Managing Member of Plaintiff ATB Holding Company, LLC ("ATB").  (AC ¶ 10.)

        Plaintiffs allege that in August 2010, Belesis and Defendant Samuel Waksal executed a "stock purchase agreement" pursuant to which Waksal agreed to sell 1000 "Class B Units" of Kadmon Pharmaceuticals, LLC to ATB in exchange for one dollar.  (AC ¶¶ 20-21.)  Plaintiffs then allege that on June 30, 2012, Defendant Steven Gordon emailed several individuals an "offer" that Waksal convey $15 million to Belesis and that all other agreements—including the purported "stock purchase agreement"—be voided.  (AC ¶¶ 41-42, Ex. E.)

---

[1] In accordance with Rule 3.B(i) of Your Honor's Individual Practices, we wrote to Plaintiffs' counsel on July 17, 2015, setting forth the original Complaint's pleading deficiencies and the reasons warranting its dismissal.  Plaintiffs filed the AC on July 27, 2015, which failed to cure these deficiencies and asserted additional claims.  We wrote a second letter to Plaintiffs' counsel on July 31, 2015, and Plaintiffs declined to withdraw the AC or seek leave to further amend the pleading.

[2] *See In the Matter of John Thomas Capital Mgmt. Grp. LLC d/b/a Patriot28 LLC, et al.*, SEC Release No. 34-70989 (Dec. 5, 2013); *Dep't of Enforcement v. John Thomas Financial, Inc., et al.*, Extended Hearing Panel Decision (FINRA Disciplinary Proceeding No. 20120334673-01, Jan. 9, 2015).



Plaintiffs allege that on July 2, 2012, Waksal delivered a letter to Belesis (the "Advisory Fee Letter") suggesting that he would pay Belesis an "Advisory Fee" equal to ten percent of his proceeds from Kadmon's upcoming IPO, but capped at $15 million. (AC ¶¶ 44-45, Ex. F.)  The Advisory Fee Letter further states that the August 2010 agreement would be terminated and Defendants would be released from all claims relating to the August 2010 agreement.  *Id.*  The letter is unsigned and incomplete, and appears to be a draft.  (AC, Ex. F.)

On July 5, 2012, Belesis executed and delivered a letter to Gordon on behalf of himself and ATB (the "Release Letter"), in which Plaintiffs released all Defendants from all claims for any "equity interest in Kadmon or any right to receive any compensation of any kind . . . from [Defendants] . . . for any other reason…"  (AC, Ex. G.)  The Release Letter further states that any agreements between Belesis and Samuel Waksal are "null and void" and "must be treated as if they were null and void at the time they were made."  *Id.*  The Release Letter makes no reference to the June 30, 2012 email from Gordon or the July 2, 2012 Advisory Fee Letter, nor does it refer to any consideration promised to Plaintiffs by any Defendant.  (*Id.*)

The AC alleges violations of Section 10(b) of the Securities Exchange Act of 1934 and various common law claims.  Plaintiffs seek specific performance of the "stock purchase agreement" or, alternatively, $15 million in damages.  For the reasons below, and as Defendants will discuss further at the pre-motion conference, the AC fails to state a claim and fails to meet the pleading requirements of the PSLRA.

**B.      Plaintiffs Released All of the Claims They Assert In the Amended Complaint**

The Release Letter is enforceable and binding on both Belesis and ATB.  *See CreditSights, Inc. v. Ciasullo*, 2008 WL 4185737, at *8-10 (S.D.N.Y. Sept. 5, 2008); *Dozier v. Deutsche Bank Trust Co. Americas*, 2011 WL 4058100, at *3-4 (S.D.N.Y. Sept. 1, 2011).  Plaintiffs concede as much in a Verified Complaint they filed against their former law firm claiming legal malpractice, in which Plaintiffs state under oath that they "sign[ed] away valuable rights in Kadmon and claims against Waksal personally arising out of the August 12, 2010, stock purchase agreement and the June 30, 2012, email."  *Belesis v. Goodwin*, Index No. 156507/2015 (Sup. Ct. N.Y. County) (Dkt. No. 1 ("State Compl."), ¶ 34).  In a transparent attempt to minimize the impact of the sworn statements he made in that verified pleading, Belesis dismissed the State Complaint without prejudice after Defendants' pre-motion letter pointed out that his claims in this Court directly contradicted his sworn statements in the State Complaint.  Plaintiffs' conclusory allegations that the Release Letter was fraudulently obtained are insufficiently pled.  *See C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc.*, 419 F. Supp. 2d 419, 430 (S.D.N.Y. 2005) (requiring the pleader to state with particularity facts demonstrating an intent to defraud); *see also id.* at 430 (assertions that a party did not intend to perform under a contract are insufficient to allege fraud).

The AC erroneously alleges that the Release Letter carves out Plaintiffs' claims in this litigation.  The only exception to the release relates to "certain selling agreements between Kadmon and ***John Thomas Financial dated as of July 2, 2012 and dated as of February 3, 2010 as amended on or about April 6, 2011***."  (AC, Ex. G) (emphasis added).  Plaintiffs allege that, in the Release Letter, "Belesis specifically referenced the July 2, 2012 selling agreement

2



i.e., the letter from Waksal attached as Exhibit F . . . ."  (AC ¶ 50.)  The document filed as Exhibit F, however, is **not** the July 2, 2012 Selling Agent Agreement between Kadmon and John Thomas Financial that is referred to in the quoted language from the Release Letter (and which is attached as Exhibit 1, hereto).  Exhibit F is instead a draft, unsigned letter to which neither Kadmon nor John Thomas Financial are party.  Because the "document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control, and the court need not accept the allegations in the complaint as true." *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (internal quotations omitted).  We raised this issue in our July 31 letter to Plaintiffs' counsel, but Plaintiffs declined to correct their misstatement.

C.      **Plaintiffs Fail to State a Securities Fraud Claim Under Section 10(b) of the '34 Act**

To state a Section 10(b) claim, plaintiffs must plead "(1) a material misrepresentation or omission by a defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).  Under the heightened pleading requirements of the PSLRA and Rule 9(b), the complaint must specify each alleged misstatement or omission, explain why it is false or misleading, and state with particularity facts giving rise to a strong inference that each defendant acted with an intent to defraud. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 321 (2007) (citing 15 U.S.C. § 78u-4(b)(1)).  Plaintiffs fail to plead any of the requisite elements, and the claims are time-barred in any event.

<u>The Claims Are Time-Barred</u>.  Section 10(b) claims must be brought not later than two years after the discovery of facts constituting a violation.  28 U.S.C. § 1658(b).  Plaintiffs' Section 10(b) claims arise from events in 2010 (Count I) and 2012 (Counts II & III), over three years before Plaintiffs filed this lawsuit on June 29, 2015.  In response to Defendants' first pre-motion letter, Plaintiffs filed the AC and added a conclusory allegation that the Section 10(b) claims are timely "because Plaintiffs did not discover the violation until July 2013" (AC ¶ 6), but alleged factually that "[i]n **or about** July 2013, Belesis was informed that Waksal would no longer speak to him and that he would not receive the $15,000,000 or any other sum." (AC ¶ 58) (emphasis added).  Regardless, the Amended Complaint fails to plead the specific time and circumstances of the discovery of the causes of action. *Lighthouse Fin. Group v. Royal Bank of Scotland Group, plc*, 902 F. Supp. 2d 329, 346 (S.D.N.Y 2012); *In re Chaus Sec. Litig.*, 801 F. Supp. 1257, 1270 (S.D.N.Y. 1992).  Paragraph 58 of the AC does not specify a date, who allegedly communicated with Belesis or how, or how that "information" constituted the "discovery of facts constituting the violation."  28 U.S.C. § 1658(b).  To the extent Plaintiffs conceivably had a claim, it accrued before July 5, 2012, when they executed and delivered the Release Letter—well prior to two years before filing this action.  Because there is no well-pleaded factual allegation that Plaintiffs discovered facts constituting the violation on or after June 29, 2013, the Section 10(b) claims are time-barred.

<u>Plaintiffs Fail To Plead A Material Misstatement</u>.  Plaintiffs allege that Exhibits A, E, and F to the AC form the basis of their securities fraud claims, but do not allege which, if any, factual statement(s) in those documents were false when made, much less explain with the requisite



particularity why such statement(s) were false or misleading.  (Exhibit F is not even a statement made by any Defendant.)  Absent factual allegations "specify[ing] each statement alleged to have been misleading, the reason or reasons why the statement is misleading, [and] stat[ing] with particularity all facts on which that belief is formed," the AC fails to state a claim under the PSLRA, 15 U.S.C. § 78u-4(b)(1), and Rule 9(b).[3]

      <u>Plaintiffs Fail To Plead Any Connection Between Any Misstatement And The Purchase Or Sale of a Security</u>.  Plaintiffs do not—and cannot—allege a connection between any misrepresentation and the purchase or sale of Kadmon stock.  In response to Defendants' first pre-motion letter, Plaintiffs' AC has added the words "purchase and sale of securities" in ten places.  But repeatedly quoting the language of the statute is not a substitute for factual allegations, and the factual allegations make clear that that Plaintiffs did not purchase or sell any securities in connection with any alleged misrepresentation.  Plaintiffs allege that they "renounced" and "effectively s[old]" their interest in Kadmon in response to the alleged misstatements that form the basis of Counts II and III (*e.g.*, AC ¶¶ 45, 100, 77(g), 84(a)(10)), but "renouncing" and "effectively selling" an interest is not a sale of a security.  *E.g.*, *Flickinger v. Harold C. Brown & Co.*, 947 F.2d 595, 598 (2d Cir. 1991) ("The securities law does not reach every conversion or theft of a security.  Section 10(b) is not violated by a fraudulent scheme that, some time after a purchase of securities, divests the purchaser of ownership.")  Similarly, Count I alleges that Plaintiffs agreed to buy securities, but "agreeing" to buy securities is not the same as actually purchasing them.  The point of Plaintiffs' lawsuit is that they did ***not*** actually acquire the securities to which they claim they were contractually entitled.

      <u>The Complaint Fails To Plead A Strong Inference Of Scienter</u>.  The AC makes no attempt to state with particularity facts with respect to ***each*** defendant that give rise to the requisite strong inference that such defendant made any material misstatement with an intent to defraud.  In response to Defendants' first pre-motion letter identifying the absence of any scienter allegations, Plaintiffs' AC has added the words "acted with scienter" in ten places.  Just like adding "purchase and sale of securities," conclusorily alleging that Defendants "acted with scienter" is not the same as "stat[ing] with particularity facts giving rise to a strong inference that the defendant acted with [scienter]."  15 U.S.C. § 78u-4(b)(2)(A); *Tellabs*, *supra*.  Plaintiffs' response to Defendants' second pre-motion letter rests their scienter claim on paragraphs 49 to 67 of the AC, which say nothing factually as to the state of mind of each of the Defendants at the time of the alleged misstatements.

## D.    Plaintiffs' Common Law Claims Fail As A Matter of Law

      <u>Breach of Contract</u>.  The June 30, 2012 email is not a contract or an offer, but is, at most, evidence of a preliminary negotiation; it states that Kadmon was "still thinking the mechanism

---

[3] We note that alleged "[m]isrepresentations or omissions involved in a securities transaction but not pertaining to the securities themselves cannot form the basis of a violation of Section 10(b) or Rule 10b–5."  *Manuf. Hanover Trust Co. v. Smith Barney, Harris Upham & Co.*, 770 F. Supp. 176, 181 (S.D.N.Y. 1991).  Moreover, only a party that actually "makes" a statement can be held liable under Section 10(b), whereas Count III is asserted against all Defendants.  *Janus Capital Grp., Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011).



through" and would "work with [Belesis' attorney] on the document." (AC, Ex. E.); *Spencer Trask Software & Info. Servs. LLC v. RPost Int'l Ltd.*, 383 F. Supp. 2d 428 (S.D.N.Y. 2003); *see also Missigman v. USI Me., Inc.*, 131 F. Supp. 2d 495, 507 (S.D.N.Y. 2001). The July 2, 2012 "Advisory Fee" letter is not executed or finalized, and is also clearly a preliminary document. The Release Letter, which Plaintiffs assert is an "acceptance" (AC ¶ 102), does not reference either document Plaintiffs claim constitutes an "offer."

Plaintiffs admit in the lawsuit against their former attorneys that no "clear written offer for $15,000,000" exists, and that the Release Letter did not "mention" any consideration. (State Compl. ¶ 38). Absent a contract, Plaintiffs' breach of contract claims fail.

Breach of Implied Covenant of Good Faith and Fair Dealing. These claims should be dismissed as duplicative of Plaintiffs' breach of contract claims because the facts underlying each claim—and the relief sought—are identical. *Simon v. Unum Grp.*, 2008 WL 2477471, at *2 (S.D.N.Y. June 19, 2008).

Fraudulent Inducement and Misrepresentation. These claims fail because claims sounding in fraud cannot be based exclusively on allegations that a party did not intend to perform under a contract. *See C3 Media*, 419 F. Supp. 2d at 430; *see also Mackinder v. Schawk, Inc.*, 2005 WL 1832385, at *11 (S.D.N.Y. Aug. 2, 2005) (a plaintiff cannot "bootstrap" a breach of contract claim into a fraud claim merely by alleging that defendant never intended to perform under a contract). These claims also fail because Plaintiffs identify no specific fraudulent statements, misrepresentations, or specific speakers of any such fraudulent statements or misrepresentations. *See Dexia Sa/NV v. Bear, Stearns & Co.*, 929 F. Supp. 2d 231, 237 (S.D.N.Y. 2013); FED R. CIV. P. 9(b).

Promissory Estoppel. This claim fails because Plaintiffs do not—and cannot—allege a clear and unambiguous promise of any sort to Belesis or ATB. *BNP Paribas Mortgage Corp. v. Bank of Am., N. A.*, 949 F. Supp. 2d 486, 516-17 (S.D.N.Y. 2013). Plaintiffs admitted in a sworn pleading that no "clear written offer for $15,000,000" exists. (State Compl. ¶ 38.)

Constructive Contract and Unjust Enrichment. Quasi-contractual relief for unjust enrichment is not permitted where, as here, Plaintiffs also allege a valid contract exists (even though that is not actually the case). *BNP Paribas*, 949 F. Supp. 2d at 513.

Tortious Interference With a Business Contract. Plaintiffs cannot allege the existence of a valid contract—an essential element of any tortious interference claim—in light of the Release Letter and the State Compl., which disclaim the legal existence of the August 2010 agreement. *Mariah Re Ltd. v. Am. Family Mut. Ins. Co.*, 52 F. Supp. 3d 601, 621 (S.D.N.Y. 2014). Moreover, there is no allegation that Defendants Kadmon and Gordon intended to harm Plaintiffs "without economic or other lawful excuse or justification." *Id.* at 622 (quotations omitted).[4]

\*     \*     \*

---

[4] In addition, because Plaintiffs' federal securities fraud claims fail, and diversity jurisdiction is not alleged, Plaintiffs' state common law claims should be dismissed for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n.7 (1988).



We look forward to discussing Defendants' proposed motion to dismiss at a time and date convenient for the Court.

Respectfully submitted,

Timothy E. Hoeffner

Attachment

cc:     John Meringolo, Esq.
        Lawrence Iason, Esq.
        Brian H. Polovoy, Esq.